## LINDEN STEEL CO. v. IMPERIAL REF. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF VENANGO COUNTY.

Argued October 7, 1891—Decided January 4, 1892.

(a) The plaintiff in a scire facias sur mechanics' lien, furnished materials to a contractor for the erection of an addition to the plant of a refining company. The materials, while in the contractor's hands, were sold as his property at sheriff's sale. The sheriff's vendee then entered into a contract for the completion of the erection, and made use of the same materials therein.

1. Admissible evidence having been adduced that notice of an intention to file a lien was given at the time of furnishing the materials, as required by § 3, act of May 18, 1887, P. L. 118, and that the materials were fur-

Statement of Facts.

nished upon the credit of the building, and the questions of fact having been properly submitted, a judgment for the plaintiff was not reversible.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 106 October Term 1891, Sup. Ct.; court below, No. 100 August Term 1888, C. P.

On August 8, 1888, the Linden Steel Co., Limited, issued a scire facias against the Imperial Refining Co., Limited, owner or reputed owner, and the Titusville Iron Works, contractor, upon a mechanics' lien filed on July 9, 1888, for shell and flange steel plates furnished in and about the erection and construction of a material and essential addition to, and upon the credit of the refinery buildings and structures therein described. On May 3, 1890, a decree was made striking off the liens in this case and another; and on November 3, 1890, the decrees were reversed by the Supreme Court, and the liens reinstated: Linden Steel Co. v. Refining Co., 138 Pa. 10.

At the trial, on March 10, 1891, it was shown that the steel plates were furnished by the plaintiff company on March 17, 22, and 27, 1888, on the order of Boughton & Ames, doing business as the Titusville Iron Works, who had taken the contract for the construction of the addition to the refinery, made with B. F. Brundred, the chairman of the refining company.

De Witt Loomis, treasurer of the plaintiff, being upon the witness stand, was asked:

" Q. What did he, Brundred, say about the material? A. He said he wanted to favor me, as I was in the steel business, and would specify our steel, the Linden steel, if I would give him our best material. We had been trying for some time, off and on, to get orders for still steel, which was very high grade. I promised him faithfully I would give him our best, but told him if it was going to the Titusville Iron Works we certainly could not afford to let them have it unless we got some security for the pay. He said he didn't know whether they were all right or not."

Objected to, that the declarations of Brundred are not competent.

By the court: Objections overruled; exception.[1]

Statement of Facts.

" Q. Go on and state what notice you gave him? A. I told Mr. Brundred then, that if this steel went to Titusville, and they failed to pay for it, we certainly would have to hold the Imperial Refining Co., Limited, for the goods; and, as we had a mechanics' lien case on hand at the time, I knew that a notice was required, and I says, I want to give you notice here and now that if they fail to pay for these goods we will file a lien on you. Mr. Brundred said he didn't see that there would be any question about that; that he had no doubt the Titusville people would be willing to give us an order on him for the material, and that could be easily fixed. I was in Oil City March 7th. Mr. Brundred told me that he had sent an order in the latter part of February to the Titusville Iron Works for one still; and that on the sixth of March, the day before I got there, he had closed with them for a couple more, and that he thought he would give them an order for another the day afterwards. He said he had specified that Linden Steel Co.'s steel should be used in building these stills."

The iron-works company received the steel plates, and began to prepare them for the stills for the refining company, but before any of the work had been delivered, the iron-works company became embarrassed in business; and, on April 13, 1888, a sheriff's sale was made of all its property, including the steel plates referred to, at the suit of the Commercial Bank, when the property was purchased by A. P. Bennett, one of the directors of the bank and as trustee for it. At this sale, notice was given that the steel plates were the property of the refining company.

The iron-works company afterward notified the refining company that it would be unable to perform its contract for the building of the stills; and on April 17, 1888, after some negotiations, Bennett, as trustee, entered into a contract with the refining company, under which the work of making the stills was completed. The same steel plates furnished by the plaintiff were used. In the meantime, the plaintiff company again notified the refining company that it would file a lien, and the latter obtained from Bennett an indemnifying bond for its protection.

The refining company, defendant, introduced evidence, oral and written, from which it was claimed that the plaintiff com-

Charge of Court below.

pany, in furnishing the steel plates, had dealt exclusively with the iron-works company, and that the goods were sold exclusively upon the credit of said company.

At the close of the testimony, the court, TAYLOR, P. J., charged the jury in part as follows :

[The plaintiff says here, that they sold this property, this steel, to the Titusville Iron Works, upon the credit of the erection of that addition to that refinery ; that at the time they parted with it, they knew the Titusville Iron Works were insolvent, or were not meeting their engagements, and that they would not contract to sell them anything without security, and that they sold it to them on the credit of the building; that they notified them at the same time and immediately afterwards, two or three times afterwards, that they intended to file a mechanics' lien against it, to collect their claim, and that they did not sell it upon the faith and credit of the Titusville Iron Works alone, but simply upon the credit of the building ; that they gave that notice three times, that they were going to file this lien, and that they held the property for it and sold it upon the faith and credit of the erection of that still; ] [7] and they ask you to infer from their knowledge, as detailed here, of the condition of the firm at that time, that they would not have sold it in any other way.  Now, that is the plaintiff's theory.

The defendant says that this sale was made absolutely to the Titusville Iron Works, the contractor; that it was an absolute sale to them and that there was no lien intended ; that the title passed to the Titusville Iron Works, and that that was the intention at the time, and passed to them ; and that the title having passed to them by delivery, it passed a good title to Bennett, the trustee, and that afterwards Bennett contracted ; that the still was erected under the contract with Bennett, and it passed a good title to this steel, divested of any lien.

Probably the bone of contention is whether that was sold upon the credit of this building or not.  There are other matters that must come in, but that is the point that is controverted here, and which is perhaps the one that would be most important in your finding.

Charge of Court below.

[We say to you, gentlemen, then, that if this material was furnished on the credit of the building or structure that was to be erected, and whether it afterwards went into its .construction—although there is no question but what the same steel did go into it, that it went into the construction of this building, and that the credit was given to the building and not to the Titusville Iron Works,—then the sheriff's sale would amount to nothing so far as divesting any lien; provided, further, that this lien was filed within six months after the property was furnished, and notice was given to the owner of the intention to file a lien against the property for this indebtedness.] [8]

On the other hand, if you find that this property was sold upon the individual credit of the Titusville Iron Works, then the sheriff's sale would vest a good title in Bennett, who afterwards constructed this still. . . . . .

The plaintiff requests the court to charge:

1. That if the jury find from the evidence that the plaintiff in good faith parted with the materials mentioned in the statement of the lien, for the purpose of building the stills in question, and that the said materials were of such a character as are necessary to build such stills; that the stills were an addition to the refinery, and that the plaintiff at the time of furnishing the materials gave the Imperial Refining Co., Limited, notice that a lien would be entered for the value of such materials so furnished, if they were not paid for, such a state of facts would entitle the plaintiff to recover, provided the lien was filed within six months from materials last furnished.

Answer: That is affirmed.[4]

4. If the materials in the lien filed were furnished in good faith to the Titusville Iron Works, contractor, to build the stills for the Imperial Refining Co., Limited, upon the credit of the building, and while so in the possession of the Titusville Iron Works, the sheriff levied upon and sold them to satisfy an execution against that company, and the plaintiff in the execution purchased at the sheriff's sale the said materials, with which afterwards he completed the steel stills under a new contract with the Imperial Refining Co., Limited, and if the purchaser at the sheriff's sale had notice at the time of purchase of the plaintiff's intention to file a lien for the said materials so furnished by it, under such a state of facts the sheriff's

sale, and all other acts and attempts to divert the property from the purposes for which the plaintiff was induced to part with the possession, would not defeat the plaintiff's right to recover.

Answer: That is affirmed.[5]

5. The book entries, bills, etc., of the plaintiff need not show that it was their intention to hold the buildings of the Imperial Refining Co., Limited, liable for the materials furnished; the fact that such was the intention, can be shown by parol testimony notwithstanding the entries in the books.

Answer: That is affirmed.

6. If the jury find that the Titusville Iron Works was contractor at the time the materials in question were ordered and delivered to the Titusville Iron Works by the Linden Steel Co., Limited, and work had been begun on the stills at the time of delivery, and afterwards the Titusville Iron Works failed to complete the contract, but the materials so furnished were in fact put into the stills by the Imperial Refining Co., Limited, and the stills completed, then the plaintiff is entitled to recover, provided the other conditions of the mechanics' lien law are fulfilled.

Answer: That is affirmed.[6]

The defendant requests the court to charge:

1. That the burden of proof is upon the plaintiff to show that the materials, for the furnishing of which the plaintiff claims a lien, were sold upon the credit of the building; and the evidence of that fact is not sufficient to submit to the jury.

Answer: Affirmed; so far as the same relates to the burden of proof. Whether there is sufficient evidence we submit to the jury.[2]

2. The purchase from the plaintiff by Boughton & Ames, doing business as the Titusville Iron Works, of the materials embracing the plaintiff's claim, and the delivery of the same to the purchaser at Titusville by the plaintiff, vested in Boughton & Ames a perfect title thereto. The sale by the sheriff of Crawford county, at Titusville, of said materials, to A. P. Bennett, trustee, vested the title thereto in him. The subsequent making of a contract by the Imperial Refining Co., Limited, with said Bennett, trustee, for the construction of the stills named in plaintiff's claim, constituted said Bennett the con-

tractor, and not Boughton & Ames; and these being the undisputed facts, the jury are instructed to find a verdict for the defendant.

Answer: This point as made and with reference to the facts in evidence, answered in the negative.[3]

—The jury returned a verdict in favor of the plaintiff for $860.35. Judgment being entered, the defendant took this appeal, assigning for error:

1. The admission of the plaintiff's offer.[1]

2, 3. The answers to the defendant's points.[2] [3]

4–6. The answers to the plaintiff's points.[4 to 6]

7, 8. The parts of the charge embraced in [ ] [7] [8]

*Mr. Roger Sherman* (with him *Mr. Samuel Grumbine*), for the appellant.

Counsel cited: Act of May 18, 1887, P. L. 118; Presbyterian Church v. Allison, 10 Pa. 413; Hills v. Elliott, 16 S. & R. 56; Church v. Davis, 9 W. 304; Howard Exp. Co. v. Wile, 64 Pa. 201.

*Mr. Isaac Ash* (with him *Mr. Peter M. Speer*), for the appellee.

Counsel cited: White v. Miller, 18 Pa. 53.

PER CURIAM:

A careful examination of this case fails to disclose error, either in the admission of evidence, the answers to points, or the charge of the court. The question was fairly left to the jury whether the plaintiff sold the steel in question to the Titusville Iron Works upon the faith and credit of the building, and the verdict of the jury settles this question of fact.

Judgment affirmed.